United States v. Joseph Jenkins

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of March, two thousand eighteen.

PRESENT:  DENNIS JACOBS,
  RICHARD C. WESLEY,
    **<u>Circuit Judges</u>**,
  RICHARD K. EATON,
    **<u>Judge</u>**.[1]

- - - - - - - - - - - - - - - - - X
**UNITED STATES OF AMERICA**,
  **<u>Appellee</u>**,

  **-v.-**                                          **16-461**

---

[1]   Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

1

**JOSEPH JENKINS,**

         <u>**Defendant-Appellant.**</u>

- - - - - - - - - - - - - - - - -X

FOR APPELLANT:                       Daniel DeMaria, Merchant Law Group LLP, New York, NY.

                                        Joseph Jenkins, <u>pro se</u>

FOR APPELLEE:                      Carina H. Schoenberger, Assistant United States Attorney, <u>for</u> Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a final judgment and sentence of the United States District Court for the Northern District of New York (Wolford, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment and sentence of the district court be **AFFIRMED**.

Defendant-appellant Joseph Jenkins appeals from a February 3, 2016 final judgment and sentence of the United States District Court for the Northern District of New York, convicting Jenkins of perjury, in violation of 18 U.S.C. § 1621(2). Jenkins raises three arguments by counsel, and additional arguments <u>pro se</u> in a supplemental brief. Through counsel, Jenkins argues that: (1) the district court erred in not granting his Fed. R. Crim. P. 29 motion because there was insufficient evidence to sustain his conviction for perjury; (2) the district court violated his Sixth Amendment rights by imposing a consecutive sentence without a jury finding to determine if a concurrent or consecutive sentence should be given; and (3) his sentence is procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, the

2

procedural history, and the issues presented for review.

**1.** Jenkins challenges the denial of his Fed. R. Crim. P. 29 motion. According to Jenkins, the district court lacked sufficient evidence to sustain his conviction for perjury because: the courtroom deputy was not authorized to take oaths; the corroborating witnesses were not credible; a conspiracy or some impropriety led to a minute and a half of the recording of his arraignment hearing being inaudible; and questions on the CJA financial affidavit were impermissibly vague.

When reviewing the sufficiency of evidence, "[w]e must credit every inference that the jury may have drawn in favor of the government, [and] [t]he jury's verdict must be sustained, if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Finley, 245 F.3d 199, 202-03 (2d Cir. 2001) (internal citation and quotation marks omitted, emphasis in original). Where a "defendant [has] failed to renew his motion for acquittal on that ground at the close of the defense case," as Jenkins did here, he "has the burden of persuading a court of appeals on the insufficiency issue that there has been plain error or manifest injustice." Id. at 202.

Under 18 U.S.C. § 1621(2), a person commits perjury when "in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, [he] willfully subscribes as true any material matter which he does not believe to be true." In turn, 28 U.S.C. § 1746 states that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced,

3

established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

. . .

(2) If executed within the United States, its territories, possessions, or commonwealths: 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.   Executed on (date). (Signature).'

Id.

It was established at trial that Jenkins signed a CJA financial affidavit which used the language of 28 U.S.C. § 1746(2) verbatim; he signed the affidavit after being cautioned to read it; Judge Baxter found the disclosures on the affidavit material to assigning Jenkins counsel; and Jenkins told his father via a prison phone call to move his assets and place accounts in his father's name. These facts suffice to support a jury convicting Jenkins for perjury.

All of Jenkins's arguments to the contrary lack merit.   First, whether or not the courtroom deputy had the authority to administer oaths is irrelevant, given that the CJA affidavit used the language of 28 U.S.C. § 1746(2).

Second, the questions in the affidavit were not vague.   "In evaluating a defendant's challenge to a question's clarity, we need to look at both the questions posed and the answers given in the context of the testimony as a whole."   United States v. Markiewicz, 978 F.2d 786, 808 (2d Cir. 1992).   "A question is fundamentally ambiguous when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony."   United States v. Lighte, 782 F.2d 367, 375 (2d Cir. 1986) (internal citation and quotation marks omitted). An individual of ordinary intelligence would not think that a question asking for information regarding "real estate, stocks, bonds, notes, automobiles, or other

4

valuable property" would allow omission of information regarding money market funds, retirement funds, and checking accounts, or recreational vehicles. See Joint App'x at 537.

Third, corroboration was not needed to sustain the conviction; still, the corroborating witnesses provided sufficient detail of their standard practices during arraignments that the jury could credit their testimony that they asked Jenkins about his assets.   See Fed. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.").   Finally, Jenkins provided no evidence to establish any nefarious motive behind the minute and a half of inaudible proceedings on the recording of the arraignment.   In any event, the recording of the arraignment was not necessary to sustain a conviction of perjury.

**2.**      Jenkins contends that under the Sixth Amendment, his perjury sentence could not be made to run consecutive to his child pornography sentence absent jury fact-finding on whether a consecutive or concurrent sentence was more just.   However, the decision whether sentences will run concurrently or consecutively is not one traditionally left to a jury's domain, and therefore does not implicate the Sixth Amendment.   See Oregon v. Ice, 555 U.S. 160, 168 (2009) ("The historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently.").   The default under federal law is for sentences for separate offenses to run consecutively, with no requirement for any fact finding. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

**3.**      Jenkins challenges the sentence for perjury as procedurally and substantively unreasonable.   The procedurally unreasonable contention rests on the argument that his Fed. R. Crim. P. 29 motion should have been granted, an argument rejected above.   Jenkins also argues that his perjury sentence is

5

substantively unreasonable because in his related transportation and possession of child pornography convictions, we found that a 225-month sentence was substantively unreasonable. See United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017). But the perjury conviction is a distinct conviction, and the sentence is below the Guidelines range sentence for perjury. The perjury sentence is substantively reasonable.

**4.** Jenkins also raises a number of arguments pro se in a supplemental brief: (i) the perjury conviction violated due process; (ii) Judge Baxter's testimony violated Fed. R. Evid. 605; (iii) the admission into evidence of taped phone calls he made from prison to his father was "unethical," "trolling," and admitting them is "plain error;" and (iv) there should be an ethics inquiry into all judges, prosecutors, and support staff employed in the Northern District of New York in Syracuse, and the district court judge overseeing his cases should be replaced.

None of these arguments has merit. The inaudible passages of the arraignment recording did not violate any due process right, because (inter alia) the recording of Jenkins' arraignment was not needed to convict him of perjury. The civil forfeiture order did not freeze all of Jenkins's accounts, see United States v. Jenkins, 130 F. Supp. 3d 700, 708 (N.D.N.Y. 2015), and did not deprive him of his choice of counsel; rather, he was out of funds because he hid his assets by trying to move them to his father. The perjury indictment was not impermissibly vague in violation of Fed. R. Crim. P. 7(c): it relies on the language of the perjury statute, 18 USC § 1621(2). See United States v. Tramunti, 513 F.2d 1087, 1113 (2d Cir. 1975) ("an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime").

Moving to Jenkins' evidentiary challenges, we review a district court's evidentiary decisions for abuse of discretion. See Boyce v. Soundview Tech. Group, Inc., 464 F.3d 376, 385 (2d Cir. 2006). First, Judge Baxter, who was a fact witness as to the arraignment only, did not preside over any of the perjury prosecution, and therefore did not violate Fed. R. Evid. 605. Second, when (as

here) a prison facility gives notice to inmates that it is recording their calls automatically, there is no violation of the inmate's Fourth Amendment right to privacy.   See United States v. Amen, 831 F.2d 373, 379 (2d Cir. 1987) ("Appellants' argument that taping their conversations violated the Fourth Amendment is also not compelling. As the Supreme Court construes the Fourth Amendment, prison inmates have no reasonable expectation of privacy."). Since Jenkins identifies no error in admitting the calls, other than vague references that we construe to be tied to privacy concerns, we reject this argument.

Finally, Jenkins provides no reason why an "ethics investigation" should be carried out, or for why his case should be assigned to a different district court judge.

Accordingly, the final judgment and sentence of the district court is hereby **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7